IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>MATTHEW H. ANSELMO, )<br>)<br>Defendant. ) | 8:09CR177<br><br>MEMORANDUM<br>AND ORDER |

This matter is before the magistrate judge on the defendant's Motion for Bill of Particulars (Doc. 17) and the Government's response thereto (Doc. 22).

## I. BACKGROUND

On May 21, 2009, the defendant was indicted on 15 counts of wire fraud, one count of mail fraud, seven counts of money laundering, and four counts of making, uttering and possessing a counterfeited and forged security. The indictment alleges that defendant was the owner, operator and manager of M&M Marketing and Premier Fighter. M&M Marketing was originally in the business of organizing and arranging golf outings and later became involved in the purchase and sale of apparel, including shirts. Defendant created Premier Fighter in January 2008 as a new line of mixed martial arts related apparel. Defendant also recruited and sponsored fighters under the Premier Fighter name.

Defendant allegedly set up a Ponzi scheme for the purpose of misappropriating investment or loan funds from various individuals for his own business and personal use. The scheme to defraud involved the use of materially false and misleading statements and omissions of material fact in the solicitation of investment/loan funds from family members, friends and

business acquaintances, purportedly for the purpose of funding apparel purchases for existing apparel contracts and orders.

In some instances, the defendant secured the investments/loans made by the victims with a promissory note issued by one of his companies (Premier Fighter or M&M Marketing) and personally guaranteed the note.  He allegedly created and provided the victim investors with copies of false purchase orders and agreements, including (1) a purchase agreement with the Cook County, Illinois government in the amount of $680,000; (2) a purchase order with Tyco International U.S., Inc. in the amount of $2,998,000; and (3) a purchase order with Northrop Grumman Corporation in the amount of $7,992,000.  These documents were offered to investors as evidence of purported pending shirt orders to be filled by the defendant and his businesses.

Defendant falsely promised a 20 to 100% return on the investment/loan, typically in 30 to 90 days.  Unbeknownst to the investors, did not use the victims' investment/loan funds to fulfill purchase orders.  Instead, defendant used the funds to pay off earlier investors (Ponzi) and existing business debts, underwrite gaming activity, purchase a personal residence and automobiles for cash, and to help fund his personal and family expenses.  As a result of the defendant's scheme, approximately 13 victims suffered a total loss of approximately $4 million.

Defendant allegedly lulled many of the victim investors into a false sense of financial security by paying back their initial investments; however, in many instances, defendant paid them with new funds obtained from subsequent investors. The victims, believing that their initial investment was successful, that the apparel orders were a legitimate and profitable investment,

and that the defendant was trustworthy, often provided additional sums of money to the defendant. Some of the victims received partial repayment and others were never repaid.

When the investments/loans were not timely repaid, the defendant provided various excuses to the victim investors for non-payment, including the following:

- The repayment checks were in the mail;
- A bank wire was or would be sent;
- The repayment funds were delayed because the payments were being wired from overseas;
- The money was being held by the banks due to a fraud investigation;
- Their funds were sent to a Pakistan supplier that had gone out of business;
- He was unable to repay the money because he was doing a "hole in one" promotion in Las Vegas and had to pay out $1 million because the promotion was not properly insured;
- He could not meet with a particular victim investor to deliver repayment funds because his wife was in an automobile accident ;
- One victim investor was told that the reason he had not received his money via wire transfer from the defendant was because the federal government was holding the funds;
- After one victim investor did not receive a check by courier service as promised, defendant advised that the check must have been sent to someone else;
- Defendant was waiting for government approval to send the funds; and
- Defendant was unable to deliver repayment checks because he was on his way from Omaha to Chicago via airplane to deliver overdue funds owed and was arrested by IRS agents when he arrived in Chicago.

The defendant allegedly used various lulling and stalling techniques and methods, e.g.,

- Repaying the investments/loans with non-sufficient funds checks and checks drawn on closed accounts;
- Advising investors that their repayment checks were sent by U.S. mail and provided non-existent tracking numbers for said mailings;
- Sending the investors empty FedEx and Express Mail packages;
- Providing false US Bank money wire transfer tracking numbers to prove that repayment funds were wired when, in fact, the funds were not wired;
- Creating and sending lulling letters on Premier Fighter stationery advising the money was held up due to "some banking issues beyond our control";

- Creating two counterfeit checks drawn on a purported I.N.G. Direct Financial Services Account at I.N.G. Direct Bank as payment to one of the victims;
- Creating a counterfeit check drawn on a purported Northrop Grumman account at Bank of America;
- Creating a counterfeit "Official Check" drawn on Wells Fargo Bank, N.A.;
- Authoring and sending false and fraudulent letters and e-mails purportedly from various banks to victim investors advising them that their money was on the way; and
- Giving a victim investor a false deposit slip purportedly for a new account deposit at First National Bank of Omaha in the amount of $8,470,000, to convince the victim that defendant had adequate funds in the bank to cover repayment of the investment monies.

For Counts I-XV (wire fraud), the indictment identifies 15 separate interstate bank wire transfers made by victim investors (identified by their initials) to the defendant or his business entities, the date they occurred, and the amount of each transfer.

The basis for Count XVI (mail fraud) is a package addressed to Premier Fighter from "M.L." containing a $200,000 check and placed in the mail by the defendant on March 24, 2008.

Counts XVII-XXIII (money laundering) allege seven specific transactions identified by date, the recipient of the payment or transfer, the financial institution, and the type of monetary transaction involved.

Finally, Counts XXIV-XXVII (making, uttering and possessing a counterfeited and forged security) specify the instruments in question by date, type, financial institution, and victim.

## II.  LEGAL ANALYSIS

The Federal Rules of Criminal Procedure provide that an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged," and, for each count, "must give the official or customary citation of the statute, rule, regulation,

or other provision of law that the defendant is alleged to have violated." Fed. R. Crim. P. 7(c). "An indictment is legally sufficient on its face if it contains all of the essential elements of the offense charged, fairly informs the defendant of the charges against which he must defend, and alleges sufficient information to allow a defendant to plead a conviction or acquittal as a bar to a subsequent prosecution." *United States v. Wessels*, 12 F.3d 746, 750 (8th Cir. 1993), *cert. denied*, 513 U.S. 831 (1994)). "An indictment will ordinarily be held sufficient unless it is so defective that it cannot be said, by any reasonable construction, to charge the offense for which the defendant was convicted." *Id*.

The court, however, may direct the government to file a bill of particulars. Fed. R. Crim. P. 7(f). "'A bill of particulars serves to inform the defendant of the nature of the charge against him with sufficient precision to enable him to prepare for trial, [and] to avoid or minimize the danger of surprise at trial.' *United States v. Hernandez*, 299 F.3d 984, 989-990 (8th Cir. 2002), *cert. denied*, 537 U.S. 1134 (2003). It 'is not to be used for discovery purposes.' [*United States v. Hill*, 589 F.2d 1344, 1352 (8th Cir. 1979), *cert. denied*, 442 U.S. 919 (1979)]." *United States v. Shepard*, 462 F.3d 847, 860 (8th Cir.), *cert. denied*, 549 U.S. 1099 (2006) (parallel citations omitted). Nor may a bill of particulars be used to provide detailed disclosure of the government's evidence. *United States v. Wessels*, 12 F.3d 746, 750 (8th Cir. 1993), *cert. denied*, 513 U.S. 831 (1994) (citing *United States v. Automated Med. Labs., Inc.*, 770 F.2d 399, 405 (4th Cir. 1985)).

In this instance, the government has provided a wealth of information in the indictment. The court is further advised that the government provided the defendant with extensive discovery and access to all evidence in the possession of the United States through its open door policy.

The court finds that the indictment fairly informs the defendant of the charges against which he must defend, and alleges sufficient information to allow him to plead a conviction or acquittal as a bar to a subsequent prosecution. The defendant has failed to demonstrate that a bill of particulars is required in this case. For these reasons,

**IT IS ORDERED** that defendant's Motion for Bill of Particulars (Doc. 17) is denied without hearing.

Pursuant to NECrimR 57.2(a), a party may appeal this order by filing a "Statement of Appeal of Magistrate Judge's Order" within ten (10) business days of the date of this Order.

**DATED August 4, 2009.**

                                        **BY THE COURT:**

                                        **s/ F.A. Gossett**
                                        **United States Magistrate Judge**